UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JIAYI CHENG, JASON LI and SHIN-YUEH KAO, individually and derivatively on behalf of EYEVIEW OPTICAL LLC,

        *Plaintiffs*,

  -against-

HAU YI WONG a/k/a NIKI WONG and EYEVIEW OPTICAL LLC,

        *Defendants*.

24-CV-1507 (ARR) (LB)

NOT FOR ELECTRONIC OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiffs Jiayi Cheng, Jason Li, and Shin-Yueh Kao initiated this action against defendants in New York state court, asserting federal and state labor claims, state derivative claims, and state common law claims for unpaid wages and defamation. *See* Notice of Removal, Ex. A ¶¶ 1–4 ("Compl."), ECF No. 1-2. Defendants removed the action to federal court and moved to dismiss nine counts in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Notice of Removal, ECF No. 1; Mem. L. in Supp. Def. Mot. to Dismiss 1 ("Mot."), ECF No. 10. For the reasons below, I conclude that this court does not have jurisdiction over plaintiffs' derivative or defamation claims. As to the remaining claims over which this court does have jurisdiction, defendants' motion to dismiss is granted in part and denied in part.

**BACKGROUND**[1]

Plaintiffs worked for defendant Eyeview Optical LLC ("Eyeview," "the LLC," or "the Company") between 2021 and 2023. *See* Compl. ¶¶ 25, 33, 40. Though the Complaint does not

---

[1] For the purposes of defendants' motion to dismiss, I assume all factual allegations in the Complaint are true. *See Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).

explicitly state the nature of Eyeview's business, defendants characterize Eyeview as an eyeglasses retailer. Mot. at 8. Ms. Cheng worked for Eyeview as an optician assistant, technician, receptionist, and bookkeeper; Mr. Li and Mr. Kao worked as opticians. Compl. ¶¶ 25, 33, 40. Defendant Hau Yi Wong was plaintiffs' supervisor. *Id*. ¶ 16. Pursuant to an oral agreement between plaintiffs and defendants, Ms. Cheng was to be paid an hourly rate of $25; Mr. Li was to be paid an hourly rate of $36; and Mr. Kao was to be paid an hourly rate of $35. *Id*. ¶¶ 101–02.

In December 2022, plaintiffs Cheng, Li, and Kao became members of the LLC pursuant to an Operating Agreement with Ms. Wong; they hold, respectively, 13.75%, 2.5%, and 18.75% membership interests. *Id*. ¶¶ 21–22. Under the Agreement, Ms. Wong is the managing member and majority shareholder of Eyeview with a 51% membership interest; she also has "complete power and authority to manage and operate the [C]ompany and make all decision[s] affecting its business and affairs." *Id*. ¶ 23.

The issues in this case relate both to plaintiffs' employment at Eyeview and to Ms. Wong's management of the LLC. Plaintiffs allege that defendants failed to pay them for some of the hours they worked; failed to provide them with spread of hours pay for days on which they worked over ten hours; failed to post notices explaining wage and hour requirements; failed to furnish accurate wage statements; and failed to pay Ms. Cheng an overtime rate for hours she worked in excess of forty hours per week. *Id*. ¶¶ 28–29, 31, 36, 43, 94–95, 100–08. Plaintiffs also allege that Ms. Wong misused Eyeview's funds; denied plaintiffs access to Eyeview's financial records; excluded plaintiffs from "important decisions and actions concerning the business"; and failed to make annual profit distributions. *Id*. ¶¶ 48–51.

Sometime before September 20, 2023, and prior to commencing this action, plaintiffs withdrew funds from Eyeview's account to compensate Ms. Cheng and Mr. Kao for "unpaid

salaries." *Id*. ¶¶ 110, 112, 114.[2] On September 20, 2023, Ms. Wong, through her attorney, issued a letter to Ms. Cheng and Mr. Kao claiming that they had misappropriated Eyeview's funds. *Id*. ¶¶ 112.[3] Plaintiffs believe the letter was also shared with other Eyeview employees and assert that it "would be read" by their future employers. *Id*. ¶¶ 111, 115.

Plaintiffs commenced this action in New York state court in January 2024. *See generally id*. The Complaint asserts four sets of claims: (1) Counts One to Six are state law derivative claims "on behalf of [plaintiffs] individually and the LLC"; (2) Counts Seven to Eleven are labor claims arising under the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 et seq., the New York Minimum Wage Order for Miscellaneous Industries and Occupations, N.Y. Comp. Codes R. & Regs. tit. 12 § 142, promulgated under NYLL, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.; (3) Count Twelve is a common law claim for unpaid wages; and (4) Count Thirteen is a defamation claim related to Ms. Wong's letter accusing plaintiffs of misappropriating funds. *Id*. ¶¶ 1–4, 8–118.

On February 28, 2024, defendants removed the action to federal court, arguing that this court has federal question jurisdiction over Ms. Cheng's FLSA claim and supplemental jurisdiction over the remaining state law claims. *See* Notice of Removal ¶¶ 6–8; Compl. ¶¶ 82–85. Defendants

---

[2] The Complaint is vague as to *who* withdrew the funds, stating only that "the transfer of funds is to compensate [p]laintiffs Cheng and Kao for unpaid salaries." *Id*. ¶ 114; *see also id*. ¶ 112 (indicating that "Wong *falsely* claimed that plaintiff[s] Cheng and Kao misappropriated Eyeview's funds by . . . transferring the funds") (emphasis added). In their brief in opposition to defendants' motion, however, plaintiffs argue that "the [c]ourt should draw a reasonable inference that [p]laintiffs were authorized to make the transfer from Eyeview's bank account to their own personal bank accounts." Mem. L. in Opp'n to Defs.' Mot. 16 ("Opp'n"), ECF No. 11. Accordingly, I understand plaintiffs' position to be that they withdrew funds from Eyeview's account.

[3] Ms. Wong also claimed that some of the misappropriated funds had been transferred to Mr. Kao's mother, Tung Chun Jen. *Id*. ¶¶ 110, 112. Plaintiffs do not specifically dispute this accusation, *see id*. ¶ 114, and, in any case, it is not material to the legal issues in this opinion.

then filed a premotion letter seeking to move to dismiss Counts One through Six, Nine, Twelve, and Thirteen of the Complaint for failure to state a claim. Defs.' Request for Pre-Mot. Conf. 1, ECF No. 7. In setting a briefing schedule for defendants' motion, I instructed defendants to further brief the issue of "whether plaintiffs' state law claims fall within this court's supplemental jurisdiction." Dkt. Order dated Mar. 26, 2024.

## LEGAL STANDARD

### *Supplemental Jurisdiction*

Federal courts have supplemental jurisdiction over state law claims that are "so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III of the United States Constitution.'" *Briarpatch Ltd.v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (quoting 28 U.S.C. § 1367(a)). This provision "applies with equal force to cases removed to federal court as to cases initially filed there." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). "For purposes of section 1367(a), claims form part of the same case or controversy if they derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quotations omitted). In determining whether claims arise from a "common nucleus," the Second Circuit has "traditionally asked whether the facts underlying the federal and state claims substantially overlap[] or the federal claim necessarily br[ings] the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (cleaned up).

### *Motion to Dismiss*

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true" and "draw all reasonable inferences in favor of the plaintiffs." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021) (quotation omitted).

4

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Determining whether a claim is facially plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## DISCUSSION

### I. Jurisdiction

As the parties asserting federal jurisdiction, defendants bear the burden of establishing jurisdiction. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). Defendants initially argued that "once the [c]ourt dismisses [p]laintiffs['] First through Sixth, Ninth, Twelfth, and Thirteenth Causes of Action the [c]ourt should exercise its powers of supplemental jurisdiction over [p]laintiff[s'] remaining state law NYLL claims." Mot. at 13. In other words, defendants argued that I should first dismiss certain state law claims pursuant to Rule 12(b)(6) and *then* assert jurisdiction over the remaining NYLL claims. To the contrary, however, a court must determine it has jurisdiction over a claim *before* deciding a Rule 12(b)(6) motion to dismiss that claim because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 249 (S.D.N.Y. 2022) (quotation omitted). Defendants' initial motion therefore did not address the crucial threshold question of whether this court has jurisdiction over the state law claims that defendants seek to dismiss on the merits. *See* Mot. at 13–16. Perhaps realizing this oversight, defendants, in their reply brief, argue that "the [c]ourt should exercise supplemental jurisdiction over [all of] [p]laintiffs' state claims because the state law claims and the FLSA claims arise out of and are based upon a core set of common facts surrounding [p]laintiffs' employment and compensation."

5

Mem. L. in Further Supp. Defs.' Mot. 8 ("Reply"), ECF No. 12. Plaintiffs, for their part, request that I exercise supplemental jurisdiction over their NYLL claims but "decline" to exercise supplemental jurisdiction over the remaining state law claims. Mem. L. in Opp'n to Defs.' Mot. 18 ("Opp'n"), ECF No. 11.

I conclude, first, that this court has supplemental jurisdiction over plaintiffs' NYLL claims and common law claims for unpaid wages. Ms. Cheng's FLSA claim for overtime compensation (Count Seven) "virtually overlap[s]" with her claim for overtime compensation under an analogous NYLL provision (Count Eight). *Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050 (KAM), 2023 WL 8003303, at *4 (E.D.N.Y. Nov. 17, 2023); *see* Compl. ¶¶ 82–89. Counts Nine through Twelve—for violations of NYLL spread of hours and wage statement requirements and for unpaid wages—also form part of the same "case or controversy" as Ms. Cheng's FLSA claim "because resolving all of these claims requires considering evidence of the hours [p]laintiffs worked, the rate and method by which they were paid, the amounts they were paid, and the parties' records (or lack thereof) on these subjects." *Proano*, 2023 WL 8003303, at *4 (quoting *Jenkins v. Yellowstone Props., Inc.*, No. 17-CV-7764, 2019 WL 4392955, at *2 (S.D.N.Y. Sept. 12, 2019)); *see* Compl. ¶¶ 90–99. I therefore conclude that I have supplemental jurisdiction over plaintiffs' NYLL claims and common law claims for unpaid wages.

The above reasoning does not extend to plaintiffs' derivative and defamation claims. These claims arise out of disputes over management of the LLC and do not, on their face, share a substantial factual overlap with Ms. Cheng's FLSA claim for overtime compensation. Nevertheless, defendants argue that supplemental jurisdiction exists over the derivative claims because it was plaintiffs' belief that they were owed unpaid wages that "led to their 'transfer of [Company] funds'"; this "unauthorized transfer" resulted in plaintiffs' termination; and plaintiffs'

6

termination "in turn formed the basis of [p]laintiffs' various state law claims against [d]efendants as a member of the Company." Reply at 8 (quoting Compl. ¶ 114). Likewise, defendants stress that the defamation claims turn on the question of whether Ms. Wong's letter "was substantially truthful," which, in turn, depends on whether plaintiffs' transfer to compensate for allegedly unpaid wages was in fact a misappropriation. *Id*. For these reasons, defendants argue, the "question of whether Eyeview owed [p]laintiffs wages" lies "at the heart of all of [p]laintiffs' claims." *Id*.

Defendants' arguments are unpersuasive. The first argument, regarding plaintiffs' derivative claims, boils down to causation: the wage dispute *caused* plaintiffs to transfer LLC funds which *caused* plaintiffs' termination which *caused*[4] the issues underlying plaintiffs' derivative claims. Reply at 8. However, a mere causal relationship between the events underlying claims is, by itself, generally "insufficient to confer supplemental jurisdiction." *Envisn, Inc. v. Davis*, No. 11-CV-12246, 2012 WL 1672887, at *3 (D. Mass. May 11, 2012); *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 999 (E.D. Mich. 1996) (concluding no supplemental jurisdiction existed where state and federal claims "appear[ed] to be causally related" but did not otherwise "share any of the same operative facts" (quotation omitted)); *see also Nicholsen v. Feeding Tree Style, Inc.*, No. 12-CV-6236, 2014 WL 476355, at *4 (S.D.N.Y. Feb. 6, 2014) (concluding that

---

[4] Defendants' suggestion that plaintiffs' termination caused (or "formed the basis of") the issues underlying plaintiffs' derivative claims does not seem entirely accurate. *See* Reply at 8. Some of plaintiffs' claims appear to arise out of their termination: plaintiffs suggest that Ms. Wong breached her fiduciary duty (Count One) and covenant of good faith and fair dealing (Count Five) by terminating plaintiffs and then excluding them from Eyeview's daily operations. *See* Compl. ¶¶ 52, 57, 74. However, plaintiffs' allegations regarding Ms. Wong's oppression of minority shareholders (Count Two), failure to make shareholder distributions (Count Three), and failure to make records available (Count Four) suggest that these issues predated plaintiffs' termination. *See id*. ¶ 49 (stating Ms. Wong denied requests for "access to necessary information and financial disclosures . . . time from time"); ¶ 50 (stating Ms. Wong denied requests for shareholder distributions "every year"). It therefore seems that at least some of plaintiffs' derivative claims are unrelated to their termination.

supplement jurisdiction existed where there was "more than a mere causal relationship" between claims). Here, disputes over plaintiffs' wages may have started a chain of events that eventually led to disputes over Ms. Wong's management of the LLC, but that does not mean that resolving Ms. Cheng's FLSA claim requires resolving plaintiffs' derivative claims or otherwise engaging with the facts underlying those claims. To resolve the FLSA claim, I would need to examine evidence related to the number of hours Ms. Cheng worked and her compensation for that work—defendants have not demonstrated that this evidence overlaps with evidence pertaining to the derivative claims, including evidence related to plaintiffs' participation in business decisions, their access to requested documents, and Ms. Wong's alleged failure to make shareholder distributions. Defendants have therefore failed to meet their burden of establishing that these claims share common operative facts sufficient to create supplemental jurisdiction.

Defendants' argument regarding plaintiffs' defamation claims is similarly lacking. Ms. Cheng and Mr. Kao allege that Ms. Wong defamed them in her letter accusing them of "misappropriat[ing] Eyeview's funds by unlawfully and unauthorizedly transferring the funds." Compl. ¶¶ 110–18. Defendants argue that because plaintiffs contend that they withdrew funds to compensate themselves for unpaid wages, the issue of whether plaintiffs were owed these wages is "fundamental" in assessing whether Ms. Wong's letter was defamatory. *See* Reply at 8. This argument assumes that had defendants owed plaintiffs wages, plaintiffs' transfer of funds would have been authorized and would not have been a "misappropriation." Yet defendants offer no support for this assumption. In fact, defendants elsewhere argue that "[w]ithout the approval or authorization of the [C]ompany or its managing member, [p]laintiffs' own self-serving allegations that they were owed money *do not entitle* [p]laintiffs to unilaterally and without authorization withdraw the funds from [d]efendants' accounts." Mot. at 12 (emphasis added); *see also* Reply at

8

6 ("The Complaint merely alleges that [p]laintiffs are owed wages, which, *even if true, would not entitle* [p]laintiffs to unilaterally withdraw money from the Company bank account without authorization from one source or another." (emphasis added)). Indeed, the Operating Agreement gives Ms. Wong "complete power and authority to manage and operate the Company," and nothing in the Agreement suggests that other members of the LLC have authority to withdraw funds to compensate themselves for unpaid wages. *See* Operating Agreement ¶ 5.1.1, ECF No. 13-1 (under seal); *see generally id.*[5] As such, defendants have not established that plaintiffs' defamation claims turn on the merits of the wage disputes. I therefore cannot conclude that the facts underlying Ms. Cheng's FLSA claim "substantially overlap[]" with the facts underlying the defamation claims. *Achtman*, 464 F.3d at 335.

In sum, defendants have not demonstrated that Ms. Cheng's FLSA claim shares a common nucleus of operative fact with plaintiffs' derivative and defamation claims.[6] Because defendants have not met their burden, and because "doubts regarding the viability of removal are resolved in favor of remanding the case to state court," *UBS Sec. LLC v. Dondero*, --- F. Supp. 3d ---, 2023

---

[5] In assessing subject matter jurisdiction, courts are permitted to look to materials "outside the pleadings," where those materials "convey information essential to the court's jurisdictional analysis." *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

[6] In addition to defendants' primary arguments for supplemental jurisdiction, discussed above, defendants also argue that "the predominance of the wage and hour issue over all of [p]laintiffs' claims is evidenced" by the fact that "twenty-two (22) out of the thirty-two (32) fact allegations" common to all claims "concern [d]efendants' alleged wage and hour practices." Reply at 8. I am also unpersuaded by this argument. First, only four of the allegations defendants cite concern Ms. Cheng's FLSA overtime claim, *see* Compl. ¶¶ 25–28, which, as the only federal claim in this action, is the relevant touchstone for analyzing supplemental jurisdiction. And regardless, defendants' argument speaks only to the *predominance* of plaintiffs' wage and hour claims, not to the *interrelatedness* of the FLSA claim and plaintiffs' other state law claims, which, again, is the relevant analysis for determining whether supplemental jurisdiction exists. *See, e.g.*, *Achtman*, 464 F.3d at 335.

WL 8472322, at *4 (S.D.N.Y. Dec. 7, 2023), I conclude that I do not have supplemental jurisdiction over these claims.[7]

## II. Motion to Dismiss

As explained above, this court's jurisdiction extends only to plaintiffs' claims for violations of the FLSA and NYLL (Counts Seven to Eleven) and common law claims for unpaid wages (Count Twelve). Of these claims, defendants move to dismiss plaintiffs' claims for spread of hours pay under NYLL regulations (Count Nine) and claims for unpaid wages (Count Twelve). Mot. at 1. I consider these claims in turn.

### A. Count Nine: Spread of Hours

Pursuant to New York's Minimum Wage Order for Miscellaneous Industries and Occupations, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any day in which . . . the spread of hours exceeds 10 hours." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4(a). Plaintiffs allege that defendants failed to pay them this spread of hours pay for days on which they worked over 10 hours. Compl. ¶¶ 91, 92. Defendants argue that plaintiffs' spread of hours claims should be dismissed because (1) the Complaint fails to identify any day on which plaintiffs worked "in excess" of 10 hours, and (2) plaintiffs earned more than minimum wage and are therefore not entitled to spread of hours pay. Mot. at 7–9. Plaintiffs respond that their allegations are "sufficiently pleaded" and that any statements in the Complaint to suggest that they earned above minimum wage are "typographical errors." Opp'n at 11–14.

To assert a plausible claim for a wage and hour violation, a plaintiff need not "provide a week-by-week recounting of the hours they worked." *Herrera v. Comme des Garcons, Ltd.*, 84

---

[7] Because I conclude that this court does not have supplemental jurisdiction, I do not reach defendants' additional arguments regarding whether I could properly decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). *See* Reply at 8–9.

F.4th 110, 115 (2d Cir. 2023). However, a plaintiff must still "provide sufficient detail about the length and frequency" of their work "to support a reasonable inference" as to the number of hours the plaintiff worked in the relevant period. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).[8] Here, plaintiffs' allegations are not sufficiently specific to support a "reasonable inference" that they worked over 10 hours on a given day. The Complaint states that "[a]t all times material, Li consistently worked at least two (2) days a week . . . and worked at least 20 hours per week" and "Kao consistently worked at least one (1) day a week . . . and worked at least 10 hours per week." Compl. ¶¶ 34, 41. This open-ended phrasing leaves significant room for uncertainty as to the number of hours plaintiffs worked on a given day. For example, it is equally possible that Mr. Li worked 30 hours over 2 days a week (yielding an average of 15 hours a day) or 20 hours over 4 days a week (yielding an average of roughly 5 hours a day). Given this uncertainty, plaintiffs allegations do not support a reasonable inference that, on any given day, Mr. Li or Mr. Kao worked over 10 hours. *See Serrano v. I. Hardware Distributors, Inc.*, No. 14-CV-2488, 2015 WL 4528170, at *4 (S.D.N.Y. July 27, 2015) (concluding that without "factual allegations regarding the number of hours [p]laintiffs actually worked per week," the court "lack[ed] sufficient facts about [p]laintiffs' working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period" (cleaned up)); *Jian Cheng Liu v. Kueng Chan*, No. 18-CV-5044 (KAM), 2020 WL 978857, at *5, *9 (E.D.N.Y. Feb. 28, 2020) (concluding that plaintiffs' allegations were sufficient where the complaint specified that

---

[8] Although the quoted language from *Herrera* and *Nakahata* refers to pleading standards for FLSA claims, "courts apply the same pleading standard for both [FLSA and NYLL claims], including the degree of specificity needed to state a claim." *Isayeva v. Diamond Braces*, No. 22-CV-4575, 2024 WL 1053349, at *18 (S.D.N.Y. Mar. 11, 2024). Thus, the Second Circuit's guidance in these cases provides a framework for assessing the adequacy of plaintiffs' spread of hours claims under NYLL regulations.

plaintiffs worked 6 or 7 days a week and a "minimum of 75 hours a week" because "[s]imple arithmetic yields an excess of ten hours a day worked by each plaintiff during their average workday").

The Complaint similarly states that "[a]t all times material, Cheng consistently worked at least seven (7) days a week . . . from 10 a.m. to 7:30 p.m. and worked at least 66.5 hours per week." Compl. ¶ 26. If Ms. Cheng consistently worked from 10 a.m. to 7:30 p.m. each day, her typical workday would be 9.5—not 10—hours long, resulting in a 66.5-hour workweek. And although the 10 a.m. to 7:30 p.m. timeframe represents the minimum number of hours Ms. Cheng worked each day, it is unclear if Ms. Cheng consistently worked above this minimum—the Complaint states only that she consistently worked "at least" 66.5 hours per week. *Id.* Again, this phrasing does not support a reasonable inference that Ms. Cheng worked over 10 hours a day on a given day. Plaintiffs' allegations are therefore insufficient to survive defendants' motion to dismiss.

In their brief in opposition, plaintiffs rely on a declaration by Ms. Cheng, submitted alongside the brief, in which Ms. Cheng states that plaintiffs "worked in excess of 10 hours per day when the store was renovated for about one week in both September, 2021 and November, 2023." Opp'n at 14; *see* Decl. Jiayi Cheng ¶¶ 7–8, ECF No.11-1. Courts generally "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata*, 723 F.3d at 202. I therefore decline to consider the new allegations in Ms. Cheng's declaration. *See Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC*, No. 16-CV-3181 (RPK), 2020 WL 7042642, at *10 (E.D.N.Y. Nov. 30, 2020) (declining to consider new factual allegations in a declaration on a motion to dismiss). Moreover, even if I were to consider these new allegations, it is unclear whether the declaration should be understood to supersede the allegations in the Complaint, and/or if the new allegations are meant to suggest that plaintiffs *only*

worked more than 10 hours per day during the weeks Ms. Cheng identifies. Accordingly, I believe the best course of action is to dismiss plaintiffs' spread of hours claims with leave to amend, to allow plaintiffs to clarify their allegations.[9]

### B. Count Twelve: Outstanding Payments

Plaintiffs allege that they had an "oral agreement" with defendants pursuant to which defendants promised to compensate plaintiffs at specified hourly rates. *See* Compl. ¶¶ 101–02. Plaintiffs further allege that defendants only paid them for some of the hours they worked at Eyeview, and that they are therefore owed wages for the uncompensated hours of work. *See id*. ¶¶ 104–08. Defendants argue that plaintiffs' claims should be dismissed because "[n]owhere in the Complaint do [p]laintiffs allege how many hours [p]laintiffs worked as compared against the hours they were paid for," making it "impossible to calculate any alleged shortfall." Mot. at 10.

Although not explicitly framed as such in the Complaint, I understand plaintiffs to assert contract claims against defendants for breach of their oral agreement. *See Kroshnyi v. U.S. Pack Courier Servs., Inc*., 771 F.3d 93, 110 (2d Cir. 2014) (explaining that "New York courts have consistently held that oral employment agreements lacking a fixed duration are not covered by the statute of frauds," and are therefore enforceable). "To state a claim for breach of contract under New York law, [a] complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc*., 802 F.3d 289, 294 (2d Cir. 2015) (quotation omitted).

Defendants argue that I should dismiss plaintiffs' claim because they have not provided adequate information regarding the number of hours they worked compared to the number of hours

---

[9] Because I conclude that these claims are not adequately pleaded, I do not reach the second dispute between the parties, regarding whether the Complaint should be read as asserting plaintiffs were paid above minimum wage. *See* Mot. at 7–9; Opp'n at 11–14.

for which defendants paid them. Mot. at 10. Plaintiffs respond that the Complaint provides "approximate total working hours." Opp'n at 15 (citing Compl. ¶¶ 25–26, 33–34, 40–41). The cited paragraphs allege that from May 3, 2021 to July 23, 2023, Ms. Cheng "consistently worked . . . at least 66.5 hours per week," Compl. ¶¶ 25–26; from June 1, 2021 to August 25, 2023, Mr. Li "consistently worked . . . at least 20 hours per week," *id*. ¶¶ 33–34; and from June 1, 2021 to July 23, 2023, Mr. Kao "consistently worked . . . at least 10 hours per week," *id*. ¶¶ 40–41. Based on these allegations, Ms. Cheng worked at least 7,714 hours, Mr. Li worked at least 2,331.5 hours, and Mr. Kao worked at least 1118.5 hours.[10] The Complaint alleges that Ms. Cheng was only paid for 1,666 hours, Compl. ¶ 105, Mr. Li was only paid for 347 hours, *id.* ¶ 106, and Mr. Kao was only paid for 300 hours, *id.* ¶ 107. Accordingly, plaintiffs provide adequate information to determine a shortfall between the number of hours plaintiffs worked and the number of hours for which they were paid.

Nevertheless, defendants object in particular to the fact that plaintiffs allege that they worked "at least" a certain number of hours per week, arguing that this language is too "vague" to establish liability. *See* Mot. at 10. However, as explained above, calculating plaintiffs' total hours using the minimum number of hours they allegedly worked per week still generates a significant shortfall. To the extent that plaintiffs worked above this minimum in certain weeks, that would only result in an even larger shortfall. Thus, any ambiguity in plaintiffs' allegations would not affect defendants' liability. I therefore conclude that plaintiffs' allegations support a reasonable

---

[10] Ms. Cheng worked 116 weeks from May 3, 2021 to July 23, 2023 (inclusive). Multiplying 116 weeks by 66.5 hours per week yields 7,714 total hours. Mr. Li worked 116 weeks and 4 days from June 1, 2021 to August 25, 2023 (inclusive). Multiplying 116 and 4/7 weeks by 20 hours per week yields 2331.5 total hours, rounding up to the nearest half-hour. Mr. Kao worked 111 weeks and 6 days from June 1, 2021 to July 23, 2023 (inclusive). Multiplying 111 and 6/7 weeks by 10 hours per week yields 1118.5 total hours, rounding down to the nearest half-hour.

14

inference that defendants failed to perform under the oral agreement. *See Iqbal*, 556 U.S. at 678. Defendants' motion is accordingly denied as to these claims.

## CONCLUSION

For the reasons explained above, I conclude that I do not have jurisdiction over Counts One to Six and Thirteen of the Complaint. These claims are therefore REMANDED to state court. *See* 28 U.S.C. § 1441(c) (directing that "[u]pon removal of an action . . . the district court shall sever from the action all claims" that are "not within the original or supplemental jurisdiction of the district court" and "shall remand the severed claims" to state court). I further DISMISS Count Nine without prejudice and grant plaintiffs leave to amend this count by June 26, 2024. Finally, I deny defendants' motion to dismiss Count Twelve.

SO ORDERED.

                                               /s/
                                       Allyne R. Ross
                                       United States District Judge

Dated:       June 12, 2024
               Brooklyn, New York